IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LAMARR PETE NEWBERN,**           CASE NO. 2:09-cv-00606
                                                     JUDGE HOLSCHUH
        **Petitioner,**                     MAGISTRATE JUDGE KEMP

v.

**ROSS CORRECTIONAL INSTITUTION,**

        **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court for preliminary consideration under Rule 4 of the Rules Governing Section 2254 Cases in United States District Courts. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts of this case as follows:

> On May 28, 2002, appellant was indicted on one count of aggravated robbery, in violation of R.C. 2911.01, two counts of robbery, in violation of R.C. 2911.02, three counts of kidnapping, in violation of R.C. 2905.01, and two counts of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331. The indictment arose out of a robbery incident at a Burger King restaurant located at 3330 Indianola Avenue.
>
> The matter came for trial before a jury on July 17, 2003. The state presented evidence that, on May 18, 2002, at approximately 5:00 a.m., three Burger King employees, Carlos

Cook, Sherra Kritley, and store manager Russell Atkins, arrived to open the store. As they were standing near the door, an individual wearing a mask and holding a gun approached them and stated, "[d]on't do anything stupid. Get in there." (Tr. 47.) They entered the store and the gunman ordered Atkins to get money out of the store safe. Atkins opened the safe, put money in a bag and handed the bag to the gunman, who fled out the back door.

Another Burger King employee, Keith Wade, was late arriving for work that day and, as he entered the parking lot, he noticed Atkins, Kritley and Cook near the store entrance. Wade also observed two other individuals "running up from around the side near the trash dumpster." (Tr. 67.) As Wade approached the store, one of these individuals came around the corner with a gun in his hand. Wade hid near Atkins' car, and watched as the man entered the restaurant with the employees. Wade did not see the other individual again, but when he stood up, he heard somebody say, "[h]ey, where are you going?" (Tr. 68.)

Wade, who had observed police officers nearby on his way to work, ran to where the officers were located, and informed them the Burger King was being robbed. Columbus Police Officer Michael Huffman drove to the scene and, as he exited his patrol car, he saw two black males fleeing Burger King. One of the suspects was wearing all black, while the other individual was wearing a gray sweatshirt, dark pants and black hat. One of the suspects was also carrying a light-colored bag. Officer Huffman chased the men across Oakland Park Avenue to a nearby auto repair store, approximately 50 yards from the Burger King. From there, the two suspects sped off in a car, heading westbound on Oakland Park Avenue.

At approximately 5:00 a.m., Columbus Police Officer Mark Seevers received a dispatch reporting a robbery at a Burger King at Oakland Park and Indianola Avenues. When he arrived at the restaurant, Officer Seevers observed another officer on foot running toward a vehicle. The vehicle was traveling westbound, and Officer Seevers began pursuing the vehicle. In addition to the driver, Officer Seevers noticed a passenger in the rear seat. Another cruiser in the area also

began pursuit of the suspect vehicle. On two occasions, the vehicle slowed down and the passenger in the rear seat attempted to exit, but then shut the door and the vehicle accelerated again.

The car eventually came to a stop on Fourth Street, and the officers attempted to block the occupants from exiting the vehicle. The driver managed to flee the car, but was apprehended by officers a short time later, while the passenger in the back, identified at trial as appellant, was blocked from leaving the vehicle.

The officers recovered two ski masks and a dark-colored sweatshirt from the back seat of the vehicle, but they did not find any weapons or money in the car. The driver of the vehicle was identified as Lamarr Poxton Newbern, the uncle of appellant.

Appellant testified on his own behalf, and he acknowledged during direct examination that he had a prior conviction for theft and for carrying a concealed weapon. Appellant denied he was involved in the robbery of the Burger King on May 18, 2002. According to appellant, on the date of the incident he received a phone call from someone asking him to "come over." (Tr. 187.) As he was walking out of the door of his house, at approximately 1:00 a.m., his uncle drove by and asked him to "come on, get in the car." (Tr. 187.) Appellant stated that another individual, who he knew on the street as "Mike," was also in the car. Appellant did not know Mike's last name.

Appellant testified that, while he was in the car, he "happened to fall asleep, and all I remember is when I woke up we was on a high-speed chase." (Tr. 190.) Appellant's uncle told him, "[d]on't worry about it, just go ahead and sit back and relax." (Tr. 190.) Appellant asked his uncle to slow down so he could get out but, on each occasion when he slowed down, he would then quickly accelerate so that appellant was unable to exit the vehicle. The car eventually stopped at a location on Fourth Street, and appellant's uncle fled the car, but appellant remained in the car "because I didn't do nothing." (Tr. 191.)

> On cross-examination, appellant acknowledged that his uncle worked at the Burger King that was robbed. Appellant denied ever applying for a job at that restaurant. He also denied that Kritley was a relative.
>
> Appellant stated that the phone call he received at 1:00 a.m. was from somebody named "Thomas." (Tr. 200.) According to appellant, there would be no record of the call because he was using a cell phone that he purchased from "somebody on the streets." (Tr. 201.) Appellant was surprised to see his uncle at his house at 1:00 a.m. with Mike; "[t]hey popped up for no reason that I know." (Tr. 207.) When appellant later woke up in the car, Mike was gone. Appellant was unaware of the ski masks and sweatshirts recovered from the backseat of the vehicle where he had been sleeping.
>
> Following deliberations, the jury returned verdicts finding appellant guilty of aggravated robbery, robbery, kidnapping and fleeing. The trial court sentenced appellant by judgment entry filed on September 25, 2003.

*State v. Newbern*, 2004 WL 1559502 (Ohio App. 10th dist. July 13, 2004). On August 10, 2005, the Ohio Supreme Court denied petitioner's motion for delayed appeal. *State v. Newbern*, 106 Ohio St.3d 1480 (2005).[1]

> Subsequent to the Supreme Court of Ohio's announcement of *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, at ¶ 53 (invalidating large portions of Ohio's felony sentencing guidelines as unconstitutional under the United States Supreme Court's rulings in *Blakely v. Washington* [2004], 542 U.S. 296, 124 S.Ct. 2531, and *United States v. Booker* [2005], 543 U.S. 220, 125 S.Ct. 738), on June 2, 2006, appellant filed a petition for post-conviction relief under R.C. 2953.21, alleging that his sentence was contrary to law, and that his due process rights were violated. The trial court denied appellant's petition

---

[1] Petitioner does not indicate in his petition that he filed an appeal to the Ohio Supreme Court, and this Court is unable to determine from the record the date that he filed his motion for delayed appeal.

4

as untimely under R.C. 2953.21(A)(2). (August 24, 2006 Entry.)

*State v. Newbern*, 2007 WL 1020830 (Ohio app. 10 Dist. April 3, 2007). On April 3, 2007, the appellate court affirmed the trial court's dismissal of petitioner's post conviction petition as untimely. *Id.*

> On July 16, 2008, defendant filed a motion to void the trial court's judgment, basing his motion on the Supreme Court of Ohio's decision in *State v. Colon*, 118 Ohio St.3d 26, 885 N.E.2d 917, 2008-Ohio-1624 ( "*Colon I*"). The common pleas court, by decision and entry filed September 17, 2008, denied defendant's motion because (1) it was an untimely successive petition for post-conviction relief, and (2) *Colon I* does not apply retroactively to the circumstances of defendant's case. Defendant appeals, contending the trial court wrongly denied his motion.

*State v. Newbern*, 2009 WL 454724 (Ohio App. 10th Dist. February 24, 2009). On February 29, 2004, the appellate court affirmed the trial court's judgment. *Id*.

On July 31, 2009,[2] petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He asserts as follows:

> The petitioner was denied his rights guaranteed by the 5th and 14th Amendments when the court convicted and sentenced him via an indictment that lack[ed] the vital and essential mens rea element for the crime, thus divesting the court of subject matter jurisdiction.

**STATUTE OF LIMITATIONS**

The Antiterrorism and Effective Death Penalty Act of 1996 imposed a one-year

---

[2] Petitioner initially filed his habeas corpus petition on July 16, 2009; however, he failed to sign his initial habeas corpus petition, and submitted a signed petition on July 31, 2009.

5

statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. §2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final on August 12, 2004, forty-five days after the appellate court's July 13, 2004, dismissal of petitioner's direct appeal, when the time period expired to file a timely appeal to the Ohio Supreme Court. *See Searcy v. Carter*, 246 F.3d 515, 518-19 (6th Cir. 2001); Ohio Supreme Court Rule of Practice II, Section 2(A)(1)(a). The statute of limitations expired one year later, on August 12, 2005. Petitioner did not file the

instant habeas corpus petition until July 16, 2009, more than 3 years later. Therefore, regardless of the date that petitioner filed his motion for delayed appeal with the Ohio Supreme Court, the record does not reflect that such action could have tolled the running of the statute of limitations so as to render this action timely. Further, petitioner's June 2, 2006, and July 16, 2008, post conviction actions did not toll or otherwise affect the running of the statute of limitations because he filed such actions after the statute of limitations had already expired. "The tolling provision does not ... 'revive' the limitations period *(i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run."* *Vroman v. Brigano,* 346 F.3d 598, 601 (6th Cir.2003), citing *Rashid v. Khulmann*, 991 F.Supp. 254, 259 (S.D.N.Y.1998); *Winkfield v. Bagley*, 66 Fed.Appx. 578, unpublished, 2003 WL 21259699 (6th Cir. May 28, 2003)(same). Additionally, both the state appellate court denied both such actions as untimely. Therefore, such actions did not constitute a "properly filed application for State post-conviction or other collateral review" under 28 U.S.C. §2244(d)(2). *Allen v. Siebert*, 552 U.S. 3 (2007). Further, petitioner has failed to allege any extraordinary circumstances that would justify equitable tolling of the statute of limitations. *See King v. Bell,* 378 F.3d 550, 553 (6th Cir.2004) (citations omitted).

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as time-barred under 28 U.S.C. §2244(d).

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge